**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **MARQUITA PAIGE,** *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No.: PWG-15-3691 |
| **CD#15CL2001, INC.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Marquita Paige filed suit against Defendant CD#15CL2001, Inc. to recover unpaid wages. Defendant has not responded to the pleadings, and Plaintiff has now filed a Motion for Default Judgment, ECF No. 9.[1] Having reviewed the filing, I find that a hearing is unnecessary. *See* Loc. R. 105.6. Plaintiff has shown Defendant's liability and established some of the damages she seeks. Accordingly, Plaintiff's Motion for Default Judgment will be granted in part and denied in part.

**FACTUAL AND PROCEDURAL HISTORY**

CD#15CL2001, Inc. is a Maryland corporation that operates two exotic dance clubs, Bazz & Crue Hall and X4B Luxury Club. *See* Compl. ¶ 2, ECF No. 1. Defendant employs exotic dancers to perform at its two locations "for the benefit of Defendant and Defendant's

---

[1] On May 18, 2016, Plaintiff Samantha Johnson voluntarily dismissed her claims against Defendant, ECF No. 8. In addition, because notice has not been sought for class members pursuant to a collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, nor has certification been sought under Rule 23 of the Federal Rules of Civil Procedure, this Memorandum and Order will be limited to the named Plaintiff in this case. *See* 29 U.S.C. § 216(b); Fed. R. Civ. P. 23(c).

customers." *Id.* ¶ 12. In September 2013, Paige successfully auditioned to work for Defendant as an exotic dancer. *See* Pl.'s Mot. 6. Paige remained employed by Defendant until May 2015. *Id*. at 3. Typically, she would work "about four (4) shifts per week," from 9:00 PM to 5:00 AM. *Id.* at 4. As an exotic dancer, she performed "dances on stage and privately for Defendants' clients in exchange for tips or 'donations.'" Paige Aff. ¶ 5, Pl.'s Mot. Ex. 1, ECF No. 9-1. Paige asserts that while employed by Defendant she was never paid in wages at all. *Id.* ¶ 11. In fact, she was required to pay Defendant a "'tip in' kickback as a condition precedent of starting any shift." *Id.* ¶ 13. The kickback fee was typically $50.00. *Id.* ¶ 14. Defendant justified its compensation method by categorizing Paige as an "independent contractor." *Id.* ¶ 15.

On December 2, 2015, Paige filed a Complaint in this Court against Defendant for violations of the FLSA; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., § 3-401 *et seq*., and the Maryland Wage Payment and Collection Law ("MWPCL"), Lab. & Empl., § 3-501 *et seq*. On March 2, 2016, Plaintiff filed a Motion for Clerk's Entry of Default. ECF No. 6. Based on Defendant's failure to respond or otherwise defend in this proceeding, on March 30, 2016, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk issued an Entry of Default as to the Defendant. ECF No. 7.

## DISCUSSION

### I.     Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process when a party applies for default judgment. First, the rule provides that "when a party … has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the Clerk's entry of default, "the plaintiff [then may] seek a default judgment." *Godlove v. Martinsburg Senior Towers, LP*, No.

14-CV-132, 2015 WL 746934, at *1 (N.D.W. Va. Feb. 20, 2015); *see* Fed. R. Civ. P. 55(b). "The Fourth Circuit has a 'strong policy' that 'cases be decided on their merits.'" *S.E.C. v. Lawbaugh,* 359 F. Supp. 2d 418, 420 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). However, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id*. at 420-22.

In determining whether to grant a motion for default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001). If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Agora Fin., LLC v. Samler,* 725 F. Supp. 2d 491, 484 (citing *Ryan*, 253 F.3d at 780-81). In order to do so, "the court may conduct an evidentiary hearing, or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award." *Mata v. G.O. Contractors Grp., Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *3 (D. Md. Oct. 29, 2015); *see* Fed. R. Civ. P. 55(b).

## II. Liability

### A. Employee Determination Under the FLSA, MWHL, and MWPCL

In order to recover under the FLSA, the MWHL, or the MWPCL, Plaintiff must first show that she was an "employee" of the Defendant. *See Butler v. PP & G, Inc.*, No. WMN-13-430, 2013 WL 5964476, at *2 (D. Md. Nov. 7, 2013). The FLSA defines an employee as "any individual employed by an employer" and it defines "employ" as "to suffer or permit to work."[2]

---

[2] Because Plaintiff's claims under the MWHL and the MWPCL run parallel to her claims under the FLSA, my analysis of the FLSA extends to the state law claims, as well. *See Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 456 (D. Md. 2000) (stating "Maryland's Wage and Hour Law defines 'employ' in a similar manner" to the FLSA and a similar test is applied); *see*

29 U.S.C. §§ 203(e)(1), (g).  Though these definitions deliberately are broad, the FLSA recognizes a difference between employees, which it covers, and independent contractors, which it does not.  *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).  Nevertheless, the Supreme Court has noted that "where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

"To determine whether a worker is an employee under the FLSA, courts look to the 'economic realities of the relationship between the worker and the putative employer.'" *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016) (quoting *Schultz*, 466 F.3d at 304).  The "economic realities" test examines six factors, none of which is dispositive on its own:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business

*Id.* (quoting *Schultz*, 466 F.3d at 304-05).  These factors first were discussed in *United States v. Silk*, 331 U.S. 704, 715 (1947), and therefore often are referred to as the *Silk* factors.  "Rather than looking at one particular factor or applying these factors 'mechanically,' courts look at the totality of the circumstances in applying them."  *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000).  Application of the test answers "whether the worker is

---

*also Macsherry v. Sparrows Point, LLC*, No. ELH-15-00022, 2015 WL 6460261, at *9 (D. Md. Oct. 23, 2015) (applying the economic realities test in a claim under the MWPCL).

economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself." *Schultz*, 466 F.3d at 304 (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

### 1. Degree of Control

With regard to the first factor, when determining the degree of control an employer club has over an individual dancer at the club, courts "generally look not only to the guidelines set by the club regarding the entertainers' performances and behavior, but also to the club's control over the atmosphere and clientele." *Butler*, 2013 WL 5964476, at *4 (finding economic dependence where, even though club did not control the "day-to-day decisions" of its dancers, it still exercised significant control by regulating "the advertising, location, business hours, maintenance of facility, [and] aesthetics"). Courts also have found significant control where clubs establish conduct policies and control performance pricing. *See McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 269 (D. Md. 2014), *aff'd*, 825 F.3d 235 (4th Cir. 2016) (finding significant control where club "imposed written guidelines" pertaining to dancer conduct that included requiring dancers to sign-in; pay "tip-in" fee; comply with set prices for private dances; and comply with behavioral guidelines).

In this case, Plaintiff alleges that Defendant "controlled all aspects of [her] job duties . . . through strictly enforced employment rules." Compl. ¶ 18. These rules included limitations on when Plaintiff could work or take breaks; nonnegotiable performance rates for dancing; restrictions on when Plaintiff could perform on stage; and other "general rules to ensure the quality of dances and atmosphere of Defendant's clubs." Paige Aff. ¶¶ 17, 21. Defendant also required dancers to pay "a $50.00 kickback 'tip-in'" before starting any shift. *Id.* ¶ 14. In the event Plaintiff did not follow Defendant's employment rules, she would be subject to discipline

including fines, suspension, and termination.  *See* Paige Aff. ¶ 19.  These rules suggest that Paige was an employee of Defendant.  *See McFeeley*, 47 F. Supp. 3d at 269; *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 918 (S.D.N.Y. 2013) (reasoning that a club's "power to impose fines, and its imposition of them even on a temporary basis, are strong indicators of its control over the dancers").

In addition, Plaintiff asserts that she did not contribute to controlling the atmosphere or clientele in the clubs, as her "primary job duty for Defendant was to perform exotic dances." Paige Aff. ¶ 24.  Defendant was "solely responsible for advertising and day-to-day operations." Pl.'s Mot. 13.  Therefore, it is clear that Defendant exercised significant control over Plaintiff, favoring an employee relationship.  *See Butler*, 2013 WL 5964476, at *4; *see also McFeeley*, 47 F. Supp. 3d at 269; *Hart*, 967 F. Supp. 2d at 918.

### 2. Opportunity for Profit or Loss

Plaintiff did not have the opportunity for profit or loss while working for Defendant. Defendant set the prices for Plaintiff's performances, and would not "allow [Plaintiff] to negotiate [her] own dance rates."  Paige Aff. ¶ 21.  Therefore, the opportunity for profit or loss was entirely regulated by Defendant.  Thus, this factor also weighs in favor of Plaintiff as an employee.  *See McFeeley*, 47 F. Supp. 3d at 270 (rejecting the argument that exotic dancers can use their "ability to entice customers to give large tips" to increase profits).

### 3. Investment in Equipment or Material

With regard to the third factor, courts look at the "investment in equipment or material, or [their] employment of other workers."  *Schultz,* 466 F.3d at 305.  According to Plaintiff, she never invested in "or ma[d]e any financial contribution to Defendant or its business operations." Paige Aff. ¶ 22.  This factor favors Plaintiff, as well.  *See Schultz,* 466 F.3d at 305.

### 4. Degree of Skill Required

"Courts have held that there is no special skill required to be an exotic dancer, pointing to the lack of instruction, certification, and prior experience required to become an exotic dancer." *McFeeley*, 47 F. Supp. 3d at 271–72 (citing *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011)); *see also Butler*, 2013 WL 5964476, at *5. Plaintiff makes clear that she was not required to have any specialized skill or education to work as an exotic dancer for Defendant. *See* Paige Aff. ¶ 23. Therefore, this factor also weighs in favor of Plaintiff. *See McFeeley*, 47 F. Supp. 3d at 241, 271–72.

### 5. Permanence of the Working Relationship

Plaintiff worked for Defendant from September 2013 to May 2015. *Id.* ¶ 2. This reflects a more permanent relationship, similar to an employee. Courts have reasoned, however, that this factor is "entitled to only modest weight in assessing employee status under the FLSA." *Hart,* 967 F. Supp. 2d at 920. Therefore, any lack of permanence in the working relationship is not "outcome determinative" in assessing whether Plaintiff was an employee. *See McFeeley*, 47 F. Supp. 3d at 273.

### 6. Integral Nature of Services Rendered

Plaintiff was undeniably an integral part of Defendant's business. This Court has stated that "any contention that the exotic dancers were not integral to the operation of [an exotic dance club] flies in the face of logic." *Butler*, 2013 WL 5964476, at *5. Similarly, Defendant's business could not operate without the employment of exotic dancers. Thus, this factor also weighs in favor of an employee relationship. *See id.*

### 7. Plaintiff Was Not an Independent Contractor

After reviewing all of the *Silk* factors, and based on the totality of the circumstances, it is apparent that Plaintiff was an employee of Defendant, and not an independent contractor. *See McFeeley*, 825 F.3d at 241; *Schultz*, 466 F.3d at 304–05; *see also McFeeley*, 47 F. Supp. 3d at 269; *Butler*, 2013 WL 5964476, at *4; *Hart*, 967 F. Supp. 2d at 918. Accordingly, I must now determine Defendant's liability.

### B. Defendant's Liability Under the FLSA, MWHL, and MWPCL

The FLSA requires employers to pay their employees at a wage not less than the minimum wage. *See* 29 U.S.C. § 206. The purpose of the federal statute "is to protect 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'" *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) (quoting *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944)). Similarly, the MWHL "allows employees to recover wages withheld unlawfully from them by their employers." *Cunningham v. Feinberg*, 107 A.3d 1194, 1202 (Md. 2015). The MWHL also mandates a minimum wage standard for employers. *See* Lab. & Empl. § 3-413.

Here, Plaintiff's well-pleaded factual allegations, taken as true, establish liability under the FLSA and MWHL. Defendant has failed to pay at least the minimum wage as required by law. *See* Compl. ¶¶ 16, 27. Plaintiff asserts in her affidavit that she worked about 32 hours per week, for 85 weeks of employment with Defendant, but was never paid wages. *See* Paige Aff. ¶ 27; *see also Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485 (D. Md. 1982) (stating that "a prima facie case [for violation of FLSA] can be made through an employee's testimony giving his recollection of hours worked").

Moreover, Plaintiff argues that at no time did Defendant "provide [her] with any notice that [she] was . . . a tipped employee, or that [she] would be paid pursuant to the tip credit

method of compensation." Paige Aff. ¶ 12; *see also McFeeley*, 825 F.3d at 245–46 (citing 29 U.S.C. 203(m); Lab. & Empl. § 3–419) (rejecting Defendants "tip credit" argument and stating that "to be eligible for the 'tip credit' under the FLSA and corresponding Maryland law, defendants were required to pay dancers the minimum wage set for those receiving tip income and to notify employees of the 'tip credit' provision"). Thus, Defendant is liable to Plaintiff under the FLSA and MWHL for unpaid minimum wages.

Furthermore, Defendant also is liable under the MWPCL. The MWPCL requires an employer to pay an "employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Lab. & Empl. § 3-505. At the end of Plaintiff's employment with Defendant, she still had not been paid any wages. Plaintiff asserts that Defendant's failure to pay wages "was willful and intentional, was not the result of any *bona fide* dispute, and was not in good faith." Compl. ¶ 74. Therefore, Defendant also is liable under the MWPCL for unpaid wages. *See* Lab. & Empl. § 3-505.

### III. Damages

#### A. Regular Damages

In order to calculate damages, "the Court . . . may rely on affidavits or other evidentiary documents in the record to determine the amount of damages." *Quiroz v. Wilhelm Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011). "The Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Lopez v. Lawns R Us*, No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008). Plaintiff cannot recover under more than one theory, however. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980) ("It … goes

without saying that the courts can and should preclude double recovery by an individual"). Therefore, Plaintiff will recover only once for all damages under the FLSA, even though Plaintiff has established Defendant's liability under all three statutes. In addition, she may recover an amount equivalent to the amount she paid Defendant as a tip-in fee. *See McFeeley v. Jackson St. Entm't, LLC*, No. DKC-12-1019, 2015 WL 2100920, at *2 (D. Md. May 5, 2015), *aff'd*, 825 F.3d 235 (4th Cir. 2016) (awarding damages for unpaid wages and daily tip-in fees Plaintiffs paid to Defendants).

Plaintiff asserts that she worked an average of $32^3$ hours per week, for 85 weeks (2,720 hours). *See* Paige Aff. ¶ 27. The FLSA requires employers to pay employees a minimum wage of at least $7.25. *See* 29 U.S.C. § 206. Plaintiff is requesting $36,720, which was calculated by multiplying the total hours worked (2,720) by $7.25, which equals $19,720; Plaintiff then added $17,000 by multiplying $200 by 85 weeks. *See* Paige Aff. ¶ 27. This resulted from the $50 tip-in fee Plaintiff paid to Defendant each shift (4 shifts per week) totaling $200 each week. *Id.* ¶ 4; Accordingly, Paige is entitled to $36,720 in unpaid wages.

**B. Enhanced Damages**

Pursuant to the FLSA, an employer who withholds compensation "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In contrast, the MWPCL states that "if an employer fails to pay an employee . . not as a result of a bona fide dispute, the court may award the employee an amount not exceeding *3 times the wage* [treble damages], and reasonable counsel fees and other costs." Lab. & Empl. § 3-507.2(a)-(b) (emphasis added).

---

[3] In her Complaint, Plaintiff claims that she worked 25-48 hours per week and notes that employees are entitled to overtime for work in excess of 40 hours per week she does not, however, identify any week in which she worked more than 40 hours or seek unpaid overtime wages in her motion for default judgment. *See* Compl. ¶ 14

Nevertheless, Plaintiff is only "entitled to recover liquidated damages under the FLSA or treble damages under the Maryland Wage Payment and Collection Law, but not both." *Quiroz*, 2011 WL 5826677, at *3. This Court has stated that "enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations." *See Lopez*, 2008 WL 2227353, at *4 (citing *Admiral Mortg., Inc. v. Cooper,* 745 A.2d 1026, 1034 (Md. 2000)).

In this case, Plaintiff has requested treble damages under the MWPCL, or in the alternative, liquidated damages under the FLSA. *See* Pl.'s Mot. 18. Plaintiff has not demonstrated any consequential damages from the Defendant's failure to pay wages. Therefore, I will deny Plaintiff's request for treble damages and instead award liquidated damages pursuant to the FLSA. *See Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012) (granting liquidated damages, but denying treble damages where Plaintiff had not shown consequential damages).

After applying the enhanced liquidated damages under the FLSA, Plaintiff is due $73,440.

### C. Pre-Judgment Interest

Plaintiff has requested pre-judgment interest. *See* Compl. ¶ 61. The Supreme Court has held that the "FLSA's liquidated damages were provided in lieu of calculating the costs of delay – which is the function of prejudgment interest – and therefore that a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank*, 895 F.2d 159, 166 (4th Cir. 1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 714–16 (1945)). Having

awarded Plaintiff twice the amount of unpaid wages, Plaintiff's request for pre-judgment interest is denied.

### D.  Post Judgment Interest

Plaintiff also requests post-judgment interest.  *See* Compl. ¶ 61.  "'Post-judgment interest is due on awards under the FLSA in accordance with 28 U.S.C. § 1961.'"  *Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011) (quoting *Thomas v. Cnty. of Fairfax, Va.*, 758 F. Supp. 353, 370 (E.D. Va. 1991)).  Therefore, I will award post-judgment interest to Plaintiff as calculated under 28 U.S.C. § 1961.

### E.  Attorneys' Fees and Costs

Furthermore, Plaintiff seeks attorneys' fees and costs.  *See* Compl. ¶ 61.  Reasonable attorneys' fees and costs are mandatory under 29 U.S.C. § 216(b).  The MWHL also provides that the Court may award reasonable attorneys' fees and costs to an employee.  *See* Lab. & Empl. § 3-427(d).  In calculating an award for attorneys' fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see also Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

Accordingly, the Court will award attorneys' fees and costs to Plaintiff.  To that end, Plaintiff shall submit a bill of costs within fourteen (14) days of this Memorandum Opinion, with Defendant's response, if any, to be submitted within fourteen (14) days thereafter.  In submitting her request for attorneys' fees, Counsel for the Plaintiff shall comply with Local Rule Appendix

B, "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." *See* Loc. R. App. B.

## IV. Conclusion

For the forgoing reasons, Plaintiff's Motion for Default Judgment will be granted in part and denied in part. Judgment will be entered in the amount of $73,440. Plaintiff will also be awarded for attorneys' fees, costs, and post-judgment interest. A separate order will follow.

Dated: January 18, 2017          _____/S/_____
                                 Paul W. Grimm
                                 United States District Judge